Francis E. THREADGILL,
Petitioner–Appellant,

v.

Bobby BOONE, Warden of the Mack
H. Alford Correctional Center,
Respondent–Appellee.

No. 01–6410.

United States Court of Appeals,
Tenth Circuit.

Oct. 11, 2002.

Before HENRY and HOLLOWAY,
Circuit Judges, and BRORBY, Senior
Circuit Judge.

## ORDER AND JUDGMENT*

BRORBY, Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A jury convicted Petitioner Francis Threadgill of fourteen sex assault-related counts. The victim was Threadgill's granddaughter. According to evidence presented by the state, Threadgill began molesting her when she was four years old, and the abuse continued for approximately ten years. His conviction was affirmed on direct appeal by the Oklahoma Court of Criminal Appeals. His request for state post-conviction relief was similarly unsuccessful.

Threadgill filed a petition for habeas corpus in federal district court under 28 U.S.C. § 2254. The district court granted him relief on Counts 4–14 but rejected his claims with respect to Counts 1–3. Threadgill appealed the district court's refusal to grant him relief on those three counts, raising two separate issues on appeal. We granted him a certificate of appealability on the second issue only— whether trial counsel denied him constitutionally adequate representation—and

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

sought supplemental briefing from the parties.

Threadgill argues that his trial lawyer provided ineffective assistance of counsel by failing to object to what he calls "other crimes" evidence. He points in particular to three forms of evidence: 1) evidence that Threadgill, while his wife was in the shower, raped his then-nine-year-old granddaughter in a hotel room at Disney World (because it occurred outside the jurisdiction of the court, this crime was not included in the information); 2) evidence that Threadgill's family, including his wife of forty years, abandoned him because they believed he was guilty; and 3) evidence that Threadgill threatened his wife and other family members if they assisted in his prosecution. Threadgill argues that the above evidence was inadmissible under Oklahoma law because it was so prejudicial and inflammatory that the jury was led astray from the properly admitted evidence, convinced that the volatile and dangerous Threadgill had a propensity to commit crime. He claims that had his trial lawyer moved to exclude the evidence, the result might have been different.

The two-pronged test for evaluating ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this test, the petitioner must demonstrate both that counsel's performance fell below a standard of objective reasonableness, and that counsel's deficient performance was prejudicial. If the defendant fails to satisfy either of these required elements, his ineffective assistance claim fails. *Id.* at 697. We "can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve." *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 624, 151 L.Ed.2d 545, —— U.S. ——, 122 S.Ct. 628, 151 L.Ed.2d 545 (2001). Here we choose to resolve the case on the prejudice prong of *Strickland*, which requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

After reading the entire transcript from Threadgill's trial, we are confident that the jury would have reached the same result with respect to Counts 1–3 even if the challenged evidence had been excluded. We begin with the charges themselves. Count 1, first degree rape, alleged that on June 22, 1994, Threadgill forcibly had intercourse with his granddaughter, age thirteen at the time. Counts 2 and 3 charged that he committed lewd and indecent acts with a child under the age of sixteen, by fondling his granddaughter's breasts and inserting his finger in her vagina, both acts occurring two days later, on June 26. The victim, now age fourteen, testified at trial in extensive detail that Threadgill committed all the acts encompassed by the three charges. The rape, which occurred in Threadgill's home on a Wednesday evening after Threadgill's wife had gone to sleep, and the two lewd acts, which took place the following Sunday in Threadgill's garage, all happened during a week while the victim was visiting her grandparents' home in Oklahoma City. Testimony from a medical expert bolstered the victim's credibility. According to the expert, who examined the victim, tissue damage discovered in her vagina was consistent with both penile and digital penetration.

During his testimony, in contrast, Threadgill offered what can only be described as a rather implausible account of the June 24 incident. He claimed that he

instructed his granddaughter to lie on the floor as he knelt over her, simulating a rape to emphasize that she should never find herself "caught in this position or you can consider yourself [raped]." R. Vol. III at 674–75. He told jurors that his demonstration upset his granddaughter, and that "later on, she said that I molested her, which I didn't." *Id.* at 674. Several letters Threadgill wrote to family members from jail after his arrest did not help his defense, either. Those letters contain many admissions of wrongdoing on his part and repeatedly beg forgiveness "for my foolish acts. God has forgiven me and I know ... you can do this [too]." *Id.* at 559–60. As he told his wife: "I know I did wrong and I'm very ... sorry for it." *Id.* at 586.

Similarly, Threadgill's primary defense—that his diabetes-related impotence prevented him from achieving an erection—fell far short of exonerating him from the rape charge. Granted, a urologist testified that Threadgill suffered from a condition known as phimosis, a marked closing of the foreskin of an uncircumcised penis accompanied by a foreshortening of the organ, and he further testified that this condition "would make it difficult for him to get an erection" or "penetrate" the victim's vagina. *Id.* at 618. But the doctor did not deny that it is possible for a phimosed penis to achieve a partial erection, *id.* at 635–40, nor that Threadgill could have manually inserted the head of his flaccid penis into the victim, *id.* at 640. The victim, in fact, testified that Threadgill placed his hands on his penis "[w]hen he was trying to put it in me." R. Vol. II at 383. And finally, the medical expert who testified about tissue damage discovered in the victim's vagina told jurors that this damage could well have been caused by a partially erect penis. *Id.* at 484.

In view of this evidence, we believe that the jury would have convicted Threadgill on Counts 1–3 whether it heard the challenged evidence or not. We conclude that he has failed to demonstrate prejudice and, therefore, cannot establish ineffective assistance of counsel. The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.